UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| KYLE L. HAZELWOOD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 1:11-CV-00103 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kyle Hazelwood appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Hazelwood applied for DIB and SSI in September 2007, alleging that he became disabled several months earlier, on July 17, 2007, due to degenerative disk disease, carpal tunnel syndrome, eczema (hands), chronic obstructive pulmonary disease ("COPD"), depression, anxiety, and attention deficit hyperactivity disorder ("ADHD"). (Tr. 164-66; Opening Brief of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 2.) The Commissioner denied his application initially and upon reconsideration, and Hazelwood requested an administrative hearing. (Tr. 66-73, 79-85, 87-100.) On January 28, 2010, a hearing was

---

[1] All parties have consented to the Magistrate Judge. (Docket # 11); *see* 28 U.S.C. § 636(c).

conducted by Administrative Law Judge ("ALJ") Daniel Mages, at which Hazelwood (who was represented by counsel), his friend, and a vocational expert testified. (Tr. 26-61.)

On March 15, 2010, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 12-21.) At the time it was issued, Hazelwood was forty-seven years old and had a ninth grade education; he had attempted to get his GED but was unsuccessful. (Tr. 34, 164, 195.) The ALJ found at step one of the five-step analysis that Hazelwood had not engaged in substantial gainful activity since his alleged onset date and at step two that he had the following severe impairments: degenerative disk disease, carpal tunnel syndrome, eczema (hands), COPD, depression, anxiety, and ADHD. (Tr. 14.) At step three, the ALJ determined that Hazelwood's impairment or combination of impairments was not severe enough to meet a listing. (Tr. 15.)

Before proceeding to step four, the ALJ determined that Hazelwood's symptom testimony was not reliable to the extent it portrayed limitations in excess of the following residual functional capacity "(RFC)":

> [T]he claimant has the residual functional capacity to perform a range of sedentary work defined as follows: sitting eight hours during an eight-hour workday, and standing and walking two hours during an eight-hour workday, with the ability to stand for one to two minutes every thirty minutes while remaining at the workstation; lifting, carrying, pushing and pulling ten pounds occasionally and five pounds frequently; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fine and gross manipulation; no concentrated exposure to extreme cold, extreme heat, wetness, humidity, dusts, gases, fumes, odors or other respiratory irritants; no vibrating tools; no repetitive forceful gripping; simple and repetitive work with the ability to attend and concentrate for two hours at a time; and no more than superficial interaction with the general public, coworkers, or supervisors.

(Tr. 16-17.)

Based on this RFC and the vocational expert's testimony, the ALJ concluded at step four that Hazelwood was unable to perform any of his past relevant work as a groundskeeper, buffer and sander, packer, stocker, and television tube inspector. (Tr. 19.) The ALJ then concluded at step five that, based on Hazelwood's age, work experience, RFC, and "limited" education, he could perform a significant number of unskilled sedentary work jobs within the economy, including telephone order clerk (75 jobs in the region, 600 in the state, and 30,000 nationwide). (Tr. 20.) Accordingly, Hazelwood's claims for DIB and SSI were denied. (Tr. 20-21.)

Hazelwood filed a complaint with this Court on July 25, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) Hazelwood advances only one argument in this appeal: that the ALJ failed to properly articulate his finding about Hazelwood's educational level.[2] (Opening Brief 4-6.)

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869

---

[2] This Opinion recounts only the portions of the 468-page administrative record relevant to Hazelwood's argument and necessary to the decision.

(7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. Part 404, Subpart P, App. 1; (4) whether the claimant is unable to perform his past work; and (5)

whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Conclusion That Hazelwood Was Not "Illiterate" Is Supported by Substantial Evidence

When articulating his step-five determination, the ALJ found that Hazelwood had a "limited" education. (Tr. 19.) Hazelwood alleges that in reaching this conclusion the ALJ ignored evidence unfavorable to his finding—specifically, that in 2008 Hazelwood told one evaluator at Grant Blackford Mental Health Center that he read at a third-grade level and a second evaluator that he had difficulty with reading and writing. (Tr. 322.) Hazelwood contends that the ALJ's omission is material because if he were found to be illiterate, he would be deemed disabled under grid rule 201.17.[4] *See Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447,

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

[4] Under grid rule 201.17, a younger individual aged 45 to 49 who is illiterate or unable to communicate in English and has an unskilled or no past work experience is disabled if he is limited to sedentary work. 20 C.F.R. Part 404, Subpart P, App. 2.
    The Commissioner emphasizes that any determination that Hazelwood had a "marginal" educational level, rather than "limited," does not result in a finding of disability under the grid rules and thus would amount to mere harmless error; Hazelwood does not contest this point in his two-paragraph reply brief. (Resp. Br. 7-8; Reply Br. 1-2); *see Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (concluding that an error is harmless when it "would not affect the outcome of the case").

450 (6th Cir. 1990) (concluding that a claimant who read below the third grade level was illiterate). Hazelwood's argument is ultimately unpersuasive.

In evaluating a claimant's educational level, the Social Security Administration uses the following categories:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
>
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. §§ 404.1564(b)(1)-(4), 416.964(b)(1)-(4). It also emphasizes that the numerical grade level that the claimant completed in school may not represent his actual educational abilities—these may be higher or lower. 20 C.F.R. §§ 404.1564(b), 416.964(b)(1)-(4). However, if there is no other evidence to contradict the numerical grade level, an ALJ will use it to determine a claimant's educational abilities. 20 C.F.R. §§ 404.1564(b), 416.964(b); *see Skinner*, 902 F.2d at 450.

Here, the record is replete with evidence supporting the ALJ's finding that Hazelwood is not illiterate. *Cf. Skinner*, 902 F.2d at 450 (reversing the ALJ's finding that claimant had a

"marginal" education where the record was replete with evidence that the claimant was illiterate). To begin, when applying for DIB, Hazelwood did not allege any impairments or limitations due to illiteracy, educational level, or difficulty with reading. (Tr. 190-91, 199, 245); *see Glenn* v. *Sec'y Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits."); *Nance v. Bowen*, No. 86 C 7983, 1987 WL 13411, at *1 (N.D. Ill. July 1, 1987) ("Nothing occurring at the hearing imposed upon the ALJ any duty to make special inquiry to determine whether, despite completion of the eighth grade, plaintiff was nevertheless illiterate."); *see also Mitchell v. Shalala*, 48 F.3d 1039, 1041 (8th Cir. 1995) ("We find it significant that [the claimant] did not raise illiteracy as a disabling factor in his applications for benefits, nor as a basis for disability at his hearing."). Hazelwood completed the ninth grade without attending special education classes. (Tr. 195); *see, e.g.*, *Howard v. Massanari*, 255 F.3d 577, 584 (8th Cir. 2001) ("Although some 9th graders may be functionally illiterate, the more common inference is that persons with nine years of public education possess some ability to read."); *cf.* 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1) (noting that "[g]enerally, an illiterate person has had little or no formal schooling").

Furthermore, the state agency employee who interviewed Hazelwood for his disability application noted "no" problems with his reading or writing. (Tr. 188.) Hazelwood indicated in his Disability Report that he could read and understand English and could write more than just his name in English. (Tr. 190.) In fact, as part of the DIB application, he independently completed a three-page Activities of Daily Living report in which he wrote the following

7

sentences or phrases by hand: "I cook 1 meal a day"; "I drive about 20 min then I stop get out and walk for a minute"; "I drive to the store or an appointment get out and stretch"; "unless it takes more than 20 min or more"; "set [sic] around and talk"; "they make me angry so I walk off"; and "I set [sic] or stand and wait." (Tr. 210-12.) He also completed a Request for Review of Hearing Decision/Order by hand, penning "I am disabled" as the reason for his request. (Tr. 7); *see Glenn*, 814 F.2d at 390-91 (affirming ALJ's finding that claimant was literate where he had either a fourth or sixth grade education, could write "only the simplest messages," and could comprehend "only the simplest written instructions").

In addition, Hazelwood's sister indicated on a Function Report - Adult Third Party that he had the ability to pay bills, handle a savings account, and use a checkbook or money orders, and that he was "ok" at following written instructions such as a recipe. (Tr. 220, 222.) Similarly, Hazelwood's wife stated that he was able to pay bills and count change but did not handle a savings account or use a checkbook because they did not have "any money to put in savings and [a] checkbook." (Tr. 235.) She also said that he uses glasses for driving and "reading." (Tr. 238.) Furthermore, Hazelwood indicated that in his past production work he completed inventory sheets and had to write, complete reports, or perform similar duties. (Tr. 192, 258-59.) In fact, the vocational expert represented that Hazelwood's past work in production was considered "semi-skilled" work. (Tr. 256); *see, e.g.*, *McElroy v. Apfel*, No. 97 C 6585, 1998 WL 196457, at *5 (N.D. Ill. Apr. 17, 1998) (concluding that claimant's past work performance undercut his claim of illiteracy). Hazelwood also maintained a driver's license. (Tr. 34.)

Moreover, aside from the evidence Hazelwood points to from Grant Blackford Mental Health Center, none of the medical source opinions of record reflect that Hazelwood had

8

limitations in reading. (*See, e.g.*, Tr. 269-72, 327-29, 339-52, 364-69, 441, 451.)  In fact, when Ceola Berry, Ph.D., evaluated Hazelwood in April 2008, she noted that although he had difficulty with simple arithmetic, he was still able to successfully complete some simple addition and subtraction calculations, successfully listed serial sevens, and was capable of managing his own funds. (Tr. 328-29.)  Indeed, her clinical impression of Hazelwood's IQ was that it was "greater than [the] level of formal education." (Tr. 329.)

Despite the plethora of evidence supporting the ALJ's finding that he was not illiterate, Hazelwood contends that a remand is necessary because the ALJ did not expressly discuss two remarks that he made to evaluators at Grant Blackford in 2008.  In that regard, an evaluating clinician at Grant Blackford noted in March 2008 that Hazelwood said "[h]e tried to get his GED but was told he would never pass because of his 3rd grade reading level." (Tr. 322.)  And a month later, Hazelwood told Dr. Dennis Ugboma at Grant Blackford that he had difficulties with reading and writing and a history of getting poor grades in school. (Tr. 333.)

Yet neither Dr. Ugboma nor any other evaluator at Grant Blackford opined that Hazelwood was limited to a third grade reading level.  In fact, when identifying psychosocial and environmental "Axis IV" problems during Hazelwood's March and April 2008 evaluations, the evaluators indicated problems with social environment, occupation, and economic conditions, but *not* education. (Tr. 324, 334.)  Indeed, to reiterate, *no* treating, evaluating, or reviewing source of record found that Hazelwood was illiterate, limited in his reading ability, or could only read at the third-grade level.

The Seventh Circuit Court of Appeals has "repeatedly stated that the ALJ need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999

9

F.2d 180, 181 (7th Cir. 1993); *accord Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). Hazelwood's two stray remarks—absent any supporting documentation—fall short of "an entire line of evidence" that would constitute a failure-to-articulate error by the ALJ and necessitate a remand of the Commissioner's final decision. *See Carlson*, 999 F.2d at 181 ("If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required.").

In sum, Hazelwood's assertion of illiteracy is unpersuasive; the ALJ's finding that he was not illiterate is amply supported by the evidence of record. Therefore, the Commissioner's final decision will be affirmed. *See generally Glenn*, 814 F.2d at 391 ("The question, to repeat, is not whether we . . . would call [the claimant] literate but whether he fits the definition in the regulations. That depends on whether he can read well enough—though very poorly—to perform a job requiring few skills. The administrative law judge thought that he could, and . . . we cannot say that his determination was unsupported.").

## IV. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Hazelwood.

SO ORDERED.

Enter for this 16th day of April, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
